IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAWN M. MAY,                                              No. CIV S-04-2680-CMK

        Plaintiff,

    vs.                                                           MEMORANDUM OPINION AND ORDER

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 8) and defendant's cross-motion for summary judgment (Doc. 11).

/ / /

/ / /

/ / /

/ / /

## I.  BACKGROUND

Plaintiff applied for supplemental security income ("SSI") benefits on April 22, 1993, based on disability.[1]  In her application, plaintiff claims that her impairment began on March 13, 1990.  Plaintiff claims her disability consists of a combination of fibromyalgia and spinal stenosis.   Plaintiff is a United States citizen born October 18, 1950, with a high school education.

Plaintiff's claim was initially denied.  Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on February 14, 1995, before Administrative Law Judge ("ALJ") Catherine Lazuran.

In her December 20, 1995, decision, the ALJ made the following findings:

1. The claimant filed an application for Supplemental Security Income benefits . . .

2. The claimant has not performed substantial gainful activity since . . . her application date;

3. The claimant's impairments, which are considered severe under the Social Security Act are mild to moderate stenosis of the lumbar spine, degenerative joint disease in both knees, fibromyalgia, hypertension, and obesity;

4. The claimant's impairments do not meet or equal in severity of Listings 1.03, 1.05C, 4.03, and 9.09 or any listed impairment of . . . [the Listings of Impairments];

5. The claimant's subjective complaints, as explained above, are not entirely credible;

6. The claimant has the following residual functional capacity:

   1) ability to lift 10 pounds;
   2) the need for a sit or stand option;
   3) the ability to do limited reaching with no overhead reaching, and no kneeling, crouching and crawling, and only occasional stooping;

---

[1]  This was plaintiff's third application for benefits.  The first application was denied at the initial level on May 7, 1991, and upon reconsideration on January 6, 1992.  Her second application was denied at the initial level on October 26, 1992, and plaintiff did not appeal.

|   |   |   |
|---|---|---|
| 7. | The claimant cannot perform her past relevant work; |
| 8. | Considering her residual functional capacity and vocational factors, there are a significant number of jobs within the national economy which the claimant can perform; among these are the jobs of animal hospital clerk and appointment clerk; and |
| 9. | The claimant has not been under a disability as defined in the Social Security Act at any time through the date of this decision. |

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to SSI benefits. After the Appeals Council declined review on February 7, 1997, plaintiff filed a complaint for judicial review in this court on March 28, 1997, which was docketed as case number CIV S–97-0500-FCD-DAD.

On September 16, 1999, the court issued findings and recommendations that the matter be remanded to the agency for further proceedings. The findings and recommendations were adopted in full on October 1, 1999, and judgment was entered on October 18, 1999. As set forth in the September 1999 findings and recommendations:

> In her motion for summary judgment and/or remand, plaintiff makes two procedural arguments and three substantive arguments. Procedurally, plaintiff argues that remand is appropriate because: (1) her counsel did not receive an audible and complete hearing tape; and (2) the ALJ refused to re-open the record when plaintiff's counsel discovered that he had failed to timely provide a copy of plaintiff's MRI. Substantively, plaintiff argues that summary judgment or remand is appropriate because: (3) the ALJ did not properly consider the testimony of plaintiff's son; (4) the ALJ erred in rejecting the opinion of plaintiff's treating physician; and (5) the hypothetical question posed to the [vocational expert] by the ALJ was incomplete because it was not properly based on the treating physician's opinion.

Without expressing an opinion on the merits of plaintiff's underlying application for benefits, the court concluded that remand was appropriate because " . . . there is not substantial evidence to support the ALJ's finding regarding plaintiff's residual functional capacity." In particular, the court held:

> . . . While the rejection of the treating physician's assessment was not erroneous in this case, the Commissioner's findings must nonetheless be supported by substantial evidence. (citations omitted). . . . In [assessing

3

> plaintiff's residual functional capacity], the ALJ cited Dr. Glickstein's and Dr. Butler's evaluations as being consistent with [her] assessment. However, neither of these doctors ventured opinions as to many of the functions the ALJ analyzed. For instance, Dr. Butler did not discuss plaintiff's ability to reach overhead, her need for a sit or stand option, nor her ability to lift or carry. (citations omitted). Dr. Glickstein did not address any of the questions addressed in the ALJ's residual functional capacity finding. (citations omitted). Thus, it is not apparent on the record what the source of the ALJ's finding in this regard was.

The court also concluded that remand was appropriate based on plaintiff's argument concerning the hypothetical question posed to the vocational expert. The court held: "Because the assessment [of plaintiff's residual functional capacity] reflected in the hypothetical question was not supported by substantial evidence, the question was tainted as well." The court rejected plaintiff's other arguments.

On remand, another administrative hearing was held on July 25, 2000, before the same ALJ. In her March 22, 2001, decision, the ALJ made the following findings:

1. The claimant has not performed any substantial gainful activity since her alleged onset date of March 13, 1990;

2. The medical evidence establishes that the claimant has severe medically determinable impairments as set forth in the body of this decision; however, the claimant's impairments, either singly or in combination, do not meet or equal the severity requirements for any listed impairment . . .;

3. For the period from May 1, 1997, through May 30, 2000, the claimant remained capable of performing a limited range of sedentary work as set forth in this decision;

4. The claimant's past relevant work positions were skilled and involved medium work activities as set forth in the body of this decision; the claimant's impairments prevent her from performing her past relevant work; the claimant does not retain acquired work skills transferable to other work within the residual functional capacity found herein;

5. The claimant has not presented subjective complaints that are credibly indicative of an inability to perform substantial gainful activity prior to May 1, 1997, or after May 30, 2000, for the reasons set forth in the body of this decision;

6. In March 1990, the claimant was age 39 and considered a younger individual; as of October 17, 2000, the claimant attained age 50 and has been considered an individual closely approaching advanced age; the claimant has a high school education;

4

7. Regarding the period prior to May 1, 1997, the claimant has not precisely satisfied the criteria of any rule of the Medical-Vocational Guidelines . . .; using Rule 201.21 as a framework for decision making, a significant number of jobs existed in the national economy that the claimant could perform consistent with her residual functional capacity, age, education, and work experience, as cited by the vocational expert;

8. For the closed period of May 1, 1997, through May 30, 2000, the claimant lacked the residual functional capacity to perform work activities for a regular 40-hour workweek on a sustained and consistent basis due to pain associated with lumbar spine degenerative joint disease, status post February 1995 laminectomy surgery and right knee osteoarthritis, status post two arthroscopic surgeries and an August 1998 total right knee replacement surgery;

9. Based upon the claimant's residual functional capacity for the closed period from May 1, 1997, through May 30, 2000, and other vocational factors, there were no jobs existing in significant numbers that she could perform; this finding is based upon Section 201.00(h) of the Medical-Vocational Guidelines . . .;

10. As of May 31, 2000, the claimant experienced significant medical improvement in her physical condition and regained the residual functional capacity to perform a limited range of light work as set forth in this decision;

11. Regarding the period after May 30, 2000, the claimant has not precisely satisfied all of the criteria of any rule of the Medical-Vocational Guidelines . . .; using Rule 202.14 as a framework for decision making, a significant number of jobs exist in the national economy that the claimant can perform, consistent with her residual functional capacity, age, education, and work experience; the vocational expert testified about such jobs;

12. Since May 31, 2000, the claimant has not been under a disability as defined in the Social Security Act, as amended, at least through the date of this decision; and

13. The claimant was under a disability . . . for the closed period of May 1, 1997, through May 30, 2000, but nor for any period prior to or thereafter.

The Appeals Council declined review on October 26, 2004, and this second action for judicial review followed.

///

///

///

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

In her motion for summary judgment, plaintiff raises the following arguments: (1) the ALJ's finding that plaintiff had significant medical improvement is not supported by substantial evidence; (2) the ALJ did not provide the specificity required to reject plaintiff's pain testimony; (3) the ALJ improperly applied the Medical-Vocational Guidelines ("Grids") at 20 C.F.R., Part 404, Subpart P, Appendix 2; and (4) the ALJ's finding concerning plaintiff's

fibromyalgia and its impact on her residual functional capacity is not supported by substantial evidence.

### A. ALJ's Findings Concerning Plaintiff's Improvement

Plaintiff states that the ALJ's finding that her condition has improved is based on the reports of Dr. Howard Sturtz, a consultative examining physician, and Dr. Kevin Cheng, one of plaintiff's treating physicians. Plaintiff argues that Dr. Sturtz's opinion cannot constitute substantial evidence because it is inconsistent. Plaintiff appears to also argue that the ALJ erred in accepting this opinion over Dr. Cheng's opinion.

As to plaintiff's medical condition after the closed period, the ALJ stated:

> As of May 31, 2000, the claimant experienced significant improvement in her condition and regained the residual functional capacity to perform a limited range of light work. Specifically, the claimant is capable of lifting up to 20 pounds frequently, standing and walking for 1 to 2 hours at a time for a total of 2 hours in an 8-hour day, sitting for approximately 6 hours in an 8-hour day, and occasionally climbing and balancing. She must avoid kneeling, crouching, crawling, forceful right lower extremity pushing and pulling, and repetitive bending. The foregoing residual functional capacity is generally based on Dr. Sturtz's May 31, 2000, examination and report and Dr. Cheng's June 26, 2000, capacity assessment.
>
> A more restricted residual functional capacity is not warranted for the period after May 30, 2000. On May 31, 2000, Dr. Sturtz, a consultative orthopedic examiner, found the claimant capable of lifting an carrying 20 pounds frequently, standing and walking for at least 2 hours in an 8-hour day, sitting for less than 6 hours in an 8-hour day, and occasionally climbing or balancing. He precluded her from kneeling, crouching, crawling, and performing repetitive forceful activities with the right lower extremity. Based on his examination findings, Dr. Sturtz diagnosed status post L4-5 lumbar laminectomy with good results, status post total right knee reconstruction with good results. Significantly, Dr. Sturtz noted that during the examination, the claimant voluntarily limited her back range of motion and exhibited inconsistent straight leg raising testing results when sitting and supine. Based on his review of the claimant's medical history and his examination findings, Dr. Sturtz concluded that the claimant's conditions were stable, unlikely to deteriorate significantly, and required only conservative treatment.
>
> On June 26, 2000, Dr. Cheng, a treating Spine Clinic physician, found the claimant was capable of lifting 15 pounds occasionally and 10 pounds frequently, standing and walking for less than 30 minutes at a time for a total of 2 to 3 hours in an 8-hour day, sitting without limitation, and occasionally stooping, kneeling, balancing, crouching, crawling, and never

7

climbing. Based on Dr. Cheng's assessment, the claimant's limited credibility, and the other evidence in the record, it is determined that the claimant's allegation of a more limited ability to sit is not supported by the overall evidence of record.

The ALJ ultimately found plaintiff to have the following residual functional capacity:

- Lifting up to 20 pounds frequently.

- Standing and walking for 1 to 2 hours at a time for a total of 2 hours in an 8-hour day.

- Sitting for approximately 6 hours in an 8-hour day.

- Occasionally climbing and balancing.

- Avoid kneeling, crouching, crawling, forceful right lower extremity pushing and pulling, and repetitive bending.

1.  Dr. Sturtz

Plaintiff bases her contention that Dr. Sturtz' opinion is inconsistent on a comparison of his written report and his entries on a medical source statement form concerning plaintiff's ability to work, both completed on or about May 30, 2000. On the medical source statement form, Dr. Sturtz noted the following:

- Plaintiff can occasionally lift and/or carry up to 20 pounds.

- Plaintiff can frequently lift and/or carry up to 20 pounds.[2]

- Plaintiff can stand and/or walk at least 2 hours in an 8-hour workday, with normal breaks.

- Plaintiff can sit for less than 6 hours in an 8-hour workday, with normal breaks.

- Plaintiff is limited to pushing and/or pulling in her lower extremities.

- Plaintiff can occasionally climb and balance.

- Plaintiff cannot kneel, crouch, or crawl.

- Plaintiff's manipulative functions are not limited.

---

[2]  Plaintiff's brief, at page 5, incorrectly notes 10 pounds.

1 • Plaintiff's speaking, hearing, and seeing are not limited.

2 • Plaintiff has no environmental limitations (such as dust and noise).

In his report, Dr. Sturtz stated:

> [Plaintiff's] Medical Source Statement is as follows: I believe she can sit for up to two hours and then may require a change of position. I believe she can stand for one to two hours and then may require a change of position. I believe she can walk one to one and a half miles at a slow to moderate pace. Bending can be done frequently. Lifting can be done frequently of weights up to 25 pounds. Repetitive bending and lifting might increase back symptomology. Squatting might be difficult but can be done occasionally. Repetitive use of foot controls should not be a particular problem. There should be no limitation regarding repetitive use or overhead use of the upper extremities. Over an eight-hour day, the patient should be able to perform these activities with reasonable periods of rest or change of position. The MSS is based upon the history, physical examination, and review of record.

The court does not find that there are material inconsistencies. The narrative report indicates that plaintiff can sit for up to two hours. This is not inconsistent with the medical source statement which states that plaintiff can sit for less than six hours because two is in fact less than six. The narrative also indicates that plaintiff can stand for up to two hours. The medical source statement states that plaintiff can stand at least two hours in an eight-hour workday. At two hours, these statements are not inconsistent. As to weights plaintiff can frequently lift, the narrative indicates "up to 25 pounds," while the source statement indicates "up to 20 pounds." The court attributes this difference to the limitations of the medical source statement form, which only provides options for 10, 20, 50, and 100 pounds or more. In light of this limitation, the statements are basically the same.

        2.    <u>Dr. Cheng</u>

Contrary to plaintiff's contention, the ALJ did not reject Dr. Cheng's opinions. In fact, the ALJ clearly stated: "The foregoing residual functional capacity is generally based on Dr. Sturtz's May 31, 2000, examination and report and Dr. Cheng's June 26, 2000, capacity assessment." The ALJ repeated her reliance on Dr. Cheng's opinions: "Based on Dr. Cheng's assessment . . . it is determined that the claimant's allegation of a more limited ability to sit is not

9

supported by the overall evidence of record." The ALJ's decision is replete with similar references to Dr. Cheng. This does not amount to a rejection of Dr. Cheng's opinion.

### B. Plaintiff's Pain Testimony

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

/ / /

/ / /

/ / /

Plaintiff argues that the ALJ erred by not setting out credible reasons for rejecting her pain testimony. Specifically, plaintiff contends that the ALJ's credibility analysis consists, in its entirety, of the following statement: "Based on Dr. Cheg's assessment, the claimant's limited credibility, and the other evidence in the record, it is determined that the claimant's allegation of a more limited ability to sit is not supported by the overall evidence of record."

Contrary to plaintiff's contention, the ALJ gave a detailed analysis of plaintiff's credibility. With respect to plaintiff's pain complaints prior to the closed period, the ALJ stated:

> Apart from objective evidence, there are substantial reasons pursuant to the factors set forth in Social Security Ruling 96-7p to conclude that the claimant's subjective symptoms did not preclude the performance of substantial gainful activity for the period from her alleged onset date to May 1, 1997. As discussed above, treatment for the claimant's back condition prior to and after her February 1995 lumbar laminectomy has been very conservative. Although Dr. Pramuk indicated that the claimant has been precluded from performing her past medium work as a nursing assistant, he repeatedly found her capable of performing less physically demanding work. The record reveals that the claimant received no significant medical treatment for the period from April 1995 to February 1997. Such a long period without treatment belies the alleged severity of the claimant's condition. As discussed in the December 1995 decision, the record includes several inconsistencies in the claimant's reported limitations and those noted by her treating physicians. All of the aforementioned factors are inconsistent with the presence of an incapacitating or debilitating medical condition that would preclude the performance of all substantial gainful activity for the period prior to May 1, 1997.

As to plaintiff's complaints after the closed period, the ALJ stated:

> Apart from objective evidence, there are substantial reasons pursuant to the factors set forth in Social Security Ruling 96-7p to conclude that the claimant's subjective symptoms did not preclude the performance of substantial gainful activity for the period after May 30, 2000. As discussed above, treatment record following the claimant's total right knee replacement surgery show steady improvement in the claimant's condition. Although the claimant's attorney argued that the January 2000 lumbar MRI scan reflects significantly debilitating degenerative changes, the objective findings and symptoms indicated in the treatment notes would not preclude the performance of work within the residual functional capacity found herein. Significantly, Dr. Cheng, a treating physician from the Spine Clinic, indicated that the claimant is capable of performing work within the residual functional capacity described above. While the claimant is obese with reported weight in excess of 220 pounds on a 67.5 inch frame, the claimant testified that she has been able to lose weight

11

through dieting and the record does not reveal any additional, significant musculoskeletal conditions or end organ damage attributable to her obesity.

As clearly shown by these sections of the ALJ's decision, the ALJ provided a detailed analysis of plaintiff's credibility and set forth several reasons for rejecting her pain testimony. To the extent plaintiff would challenge the ALJ's reference to reasons set forth in the prior decision, the court notes that plaintiff did not raise a credibility argument in the first district court action. Therefore, plaintiff should not be heard to complain about the ALJ's prior credibility analysis. Finally, plaintiff does not challenge the substance of the above credibility analysis. The court finds that plaintiff's argument that the ALJ failed to set forth credible reasons for rejecting her pain testimony is unpersuasive.

### C. Application of the Grids

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert. Campbell, supra at 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional

limitations do not impact the claimant's exertional capabilities.[3]  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Plaintiff argues that, "[b]ecause the claimant has non-exertional limitations, the medical and vocational guidelines . . . cannot be used except as a 'framework for decision making.'" It would appear from this that plaintiff is arguing that the ALJ relied on the Grids to conclude that plaintiff was disabled even though she has non-exertional limitations.  This argument has no merit.  The record is clear that the ALJ used the Grids as a framework, and did

/ / /

/ / /

---

[3] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

not rely on the Grids for the ultimate conclusion of disability. Specifically, the ALJ stated:

> Considering the claimant's residual functional capacity and vocational profile within the <u>framework</u> of Medical-Vocational Rule 2-2.14, it is determined that for the period after May 30, 2000, to the present, there have been unskilled jobs existing in significant numbers in the national economy which an individual such as the claimant could perform. This conclusion is supported by the testimony of the vocational expert. Thus, the record supports the finding that for the period after May 30, 2000, the claimant has not been disabled. (emphasis added).

To the extent the Grids are not fully applicable to plaintiff's case, it is obvious that the ALJ satisfied the agency's burden by taking the testimony of a vocational expert.[4]

In addition, the court finds plaintiff's argument somewhat disingenuous given that she does not complain about the ALJ's actual reliance on the Grids to determine that plaintiff was disabled for the closed period.[5]

### D. ALJ's Finding Concerning Plaintiff's Fibromyalgia

Plaintiff argues that the ALJ failed to point to any substantial medical evidence to support her conclusion that plaintiff's fibromyalgia, while severe, has no adverse impact on her residual functional capacity. Plaintiff is incorrect. As to plaintiff's fibromyalgia, the ALJ stated:

> The treatment notes include only sporadic and vague references to fibromyalgia and do not consistently document the existence of a significant number of trigger points. Moreover, there is no documentation that other causes for the claimant's pain complaints have been systematically ruled out. According the claimant every reasonable benefit of the doubt, the claimant's fibromyalgia is considered severe in combination with her other conditions. However, the record does not support finding that this condition would prevent the performance of work activity within the residual functional capacity found herein for the period prior to May 1, 1997, and after May 30, 2000.

---

[4] Plaintiff has abandoned the argument raised in the prior district court action that the hypothetical question posed by the ALJ to the vocational expert was incomplete such that the vocational expert's testimony should not constitute substantial evidence. The court notes that, in the instant action, plaintiff does not challenge any aspect of the vocational expert's testimony.

[5] The ALJ stated that her conclusion that plaintiff was disabled for the closed period was "...based upon Section 201.00(h) of the Medical-Vocational Guidelines..." In particular, the ALJ did not use the word "framework," as she did for the period after May 30, 2000.

After noting that plaintiff's treating physician had diagnosed fibromyalgia, the ALJ discussed at length the same doctor's clinical findings and opinion that plaintiff could nonetheless do some light work. The ALJ continued:

> The evidentiary record has no evidence of any significant treatment for the claimant's . . . fibromyalgia . . . from April 1995 until February 1997 when the claimant fell down some steps. The lack of significant treatment for the period from April 1995 to February 1997 suggests that [this] condition[] [was] generally stable and not significantly symptomatic.

The ALJ also considered Dr. Cheng's opinion with respect to plaintiff's fibromyalgia:

> . . . In July 1999, Dr. Cheng, a Spine Clinic physician, found that the claimant had fibromyalgia low-back trigger points and recommended a series of trigger point injections. . . . On January 27, 2000, Dr. Cheng indicated that the claimant could be able to work within 6 months based on diagnoses of spinal stenosis, fibromyalgia, and degenerative joint disease. . . .
>
> Dr. Cheng's February 2000 and April 2000 treatment notes reveal conservative treatment . . . In fact, Dr. Cheng's April 18, 2000, treatment note indicated that the claimant had been doing some gardening.

From this it is clear that, contrary to plaintiff's contention, the ALJ did in fact cite to evidence in the record to support her conclusion regarding plaintiff's fibromyalgia. Specifically, the ALJ noted plaintiff's treating physicians' opinions that, notwithstanding fibromyalgia, plaintiff could do at least light work. Additionally, the ALJ noted sparse treatment for fibromyalgia.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. Defendant's cross-motion for summary judgment is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 24, 2006.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE